Good morning. May I please the Court? Yes, ma'am. My name is Carlos Ramirez and I'm the attorney for the petitioner, Mr. Horacio Munoz. The issue that we ask this Court to consider today is whether the government met its burden to show that petitioners committed the act of alien smuggling at the Mexico border. And specifically, I am referring to section 212A6, capital EI, of the Immigration and Nationality Act, which says law requires an affirmative act from the individual. And this person needs to have knowledge who at any time knowingly, excuse me, has encouraged, induced, assisted, abetted, aided any other alien to enter or try to enter the United States in violation of law. Mr. Ramirez, who owned the automobile which transported Pedro Roa Lopez? The petitioner stated while in the sworn statement that it belonged to him and his wife. Him and his wife. Yes, Your Honor. They lived in California. Yes, Your Honor. Community property, shared managership, man and wife, right? Correct. Why isn't the use of the automobile owned by Mr. Munoz Tena an affirmative act when he's in the automobile? Your Honor, I can understand if he had driven the vehicle himself. So, in other words, if a moment before the smuggling is to occur, he changes places with somebody he's brought to drive the car, and neither he nor his wife is driving the car, then it's not an affirmative act. I think it takes something beyond, because there's no evidence that there's another car. You have a case that tells me that using an automobile to transport an alien who is being smuggled is not an affirmative act when the automobile is owned by a person who is in the car with the other owner. I don't know of any other case. No, I don't think so. All right. Next. Thank you. Let me go to a similar type situation. Yes, Your Honor. In the last case, we questioned the government pretty stiff. My colleagues were better than I as to what the BIA had done about an alternative holding. In this case, the words were there was no other testimony. There's no testimony at all. We just had documents, right? Correct, Your Honor. But it seemed to me that the BIA made an alternative finding other than simply what documents there were there, and that's the finding they make on page 4 of the record, which has to do with the declarations of his wife. It seems as if what they're suggesting in that paragraph is that the alternative finding of his wife's testimony, which has not been objected to, has not been made a subject of the objections of what you brought, is very ample testimony as an alternative finding of what happened here, because they say, furthermore, the respondent claims he may have known that his wife intended to use his stepson's birth certificate to smuggle, but then they say the respondent's wife admitted that he helped her scheme the smuggling attempt, and they knew the consequences of the actions they were taking. And then the BIA says, we conclude the IJ's fact-finding. In other words, the fact-finding, and then they say, including discrediting the testimony, which is the adverse credibility finding, is not clearly erroneous. Why is that not enough in this case to suggest that there's an alternative finding here that is not objected to by the wife? I think, Your Honor, because the board was overreaching, in my opinion. The board was overreaching? Overreaching because the wife was not brought to testify. There is no sworn statement taken from her. We don't know at what point the woman, the wife, made these statements. They're in the reports, right? They're in the reports, but we don't know. And they're not objected to on that basis, are they? No, they're not, Your Honor. They're only objected to based on how somehow he was coerced. But there's no objection on her coercion at all. Well, initially, when the motion to terminate and motion to suppress was filed, we requested that all three documents be suppressed. So, technically, any statements that were made within the documents. Well, but, I mean, he has no right to suppress his wife's statements. But we don't know exactly what. The interesting portion about these documents presented, and I'm referring to the sworn statement, but specifically to the I-213 and the record of investigation, is that they're extractions from statements made by individuals. They're not full statements. They're not under sworn statement. They're information taken from this individual and from that individual, and then they create these reports. Well, I understand, but we're now in immigration proceedings. We're not in a court of law, so we get a lot of different evidence that's not exactly the way we would do it in a court of law. And here we have some statements which were dead on. And the question is not whether these forms should have been admitted, because there's no question we can get them admitted. The question is, is whether they were coerced in some way. And we have no objection as to the coercion. And now we have an alternative finding, and so, therefore, I think I'm kind of stuck based on substantial evidence. Well, I think that the ulterior or ulterior finding from the Board does not meet the standard. Well, didn't the Board apply the wrong burden of proof in this case? The wrong burden of proof? Yes. The Board said the Respondent must prove that he or she is clearly and beyond a doubt entitled to be admitted to the United States and is not admissible as charged. That's an error of law, isn't it? Well, the Respondent only has, well, in this case, a plaintiff. The government states correctly the standard in its brief, which is the government has the burden, the government has the burden of proving the facts relating to the charge of removability set out in the NTA by clear and convincing evidence. That's correct, Your Honor. And in some places it uses clear, convincing and unequivocal evidence. That's correct. Right. So the VIA decision, which I assume both of you agree is the one we should be reviewing in this case. Yes, Your Honor. The only burden that the Respondent has, the alien, I should say, upon requesting admission is that he is in fact admissible. And he presented his LPR card at the border. He was in the back seat. And how did the legal error in this case regarding the burden of proof regarding inadmissibility affect in any way the alien smuggling charge? Well, I think the burden is definitely on the government. Once the alien ---- So how did, okay, the burden is on the government. So Judge Fahy's question is right on. So the next argument you should be making is why when it applied, put the burden of proof on the alien, it erred and that error infected its findings, like the weight it gave to certain evidence and whether or not the government actually met its burden of proof in this case given these facts. Well, I think the government relied primarily on this one statement. No, no, no, no. Step back a second. The government is wrong, the BIA is wrong as to the burden of proof on inadmissibility. But this alien is not being removed because of inadmissibility. Right. He's being removed because of alien smuggling. Exactly. So my question, which Judge Wardlaw has also asked you, is how does the error as to inadmissibility affect at all the error, if you claim there is an error, as to removability for alien smuggling? It doesn't, does it? Well, nonetheless, the government still has the burden to show whether, in fact, he committed the act. Right. So it has a burden to show that he's attempting to smuggle an alien, right? So can we just forget about the error regarding the wrong burden of proof regarding inadmissibility? We can certainly do that. All right. Fine. May I continue? Yes. Thank you. And I think perhaps the most credible document here that supports our argument is Petitioner's own sworn statement. And that's how we lay out the facts. And I have to admit that the officer in this case was very thorough in asking the questions, particularly who are the characters and how is it that the petitioner decided to come along in the vehicle. One important fact I think is very important, I think the government has been trying to make its own argument, is the fact that somehow Mr. Munoz, the petitioner, planned it with his wife. And there's no evidence of that, Your Honor. Wait a minute. I think that, and I'd like to... In the certificate, didn't he admit that his wife wanted to do his favor for Hilda and said, how are we going to pick him up? And she said, we can use Joshua's certificate. Turn to page 111 of the record. That's what I thought was... When Hilda called your wife and asked her if she could do her a favor on Friday, et cetera, isn't that the whole story, that she said, we can use Joshua Palomino's? This is her idea, Your Honor. This is her idea. It was her idea and he said, okay, we'll do it, right? Well, what he did say is... I'll go along with you. We'll use our car. We'll take our children to disguise it even better. We don't know that's the petitioner said that. That's not any evidence. Your Honor, what we do know is... That's exactly what his wife said. Once again, we come back to the fact whether his wife, we don't know exactly what his wife said. We have little extractions that the government very conveniently put in the reports as to what she said. There's probably one or two sentences that she may have said. If you were really after what his wife said, why didn't you ever move to strike it? Why is it that the only objections you're making are the coercion of what he did? Your Honor, today I'm making the argument that the government did not meet its burden because the fact that he had knowledge of the fact, the fact that his wife told him, let's take the birth certificate, let's take the kids. This is his wife's friend who offered to, who asked her to do it. It wasn't the petitioner who came up with the idea. And this is her son's birth certificate. It is not petitioner's son's birth certificate. This is his stepson from a prior relationship. So if anything, he was in his, he wanted to help out his wife in support, and he was concerned for her well-being. Let me ask you to read page 153 of the statement. Officer Rios, what else happened? What did your wife tell you when she hung up the telephone with Hilda? Mr. Munoz, she told me, she told me, Flaco, can we go pick up this guy? I tell her, and how are you going to pick him up? She says, well, I don't know. She says, let's see if with the certificate. I told her, well, it's up to you. She says, let's try it with Joshua's certificate. It's up to you. It's your decision. You are the one that's calling the shots here. And she calls the shots. Exactly. And he says, let's take the car, let's take the children, let's do it. No, Your Honor, that's not what he said. Those are not the facts. We don't know whether he's the one. That's what happened. That's what happened. But she's the one that was calling the shots. It's very clear. Can I ask you a question? So you guys decided that and did accept to help this purpose, Mr. Munoz? Uh-huh. You guys decided? Well, Your Honor, to help him try to cross the United States to the United States with the plan that you guys were going to use Joshua's certificate, who is your wife's son, Mr. Munoz. Now it's the officer saying you guys, you guys. Now he's trying to make it as if the petitioner is also as culpable as his wife. It's a leading question. It's a leading question. He's not an attorney. So you can't answer a leading question? Can I ask you a question? This case, like the previous one, unlike almost every other border interview scenario from this very border that we've seen, there's a videotaped recording and the administrative record comes with the recording. And all three of us, even as late as this week, have watched DVDs with the Border Patrol questioning so that we could make some determination as to whether there was coercive questioning or not and whether the statement should be excluded. In this case, we, again, do not have the DVD as part of the administrative record. Do you have a copy of it? I do not. Now, why wouldn't you get a copy of it? It's very difficult to get it from the government. Well, it should be part of the administrative record.  I agree, Your Honor. All they have is a transcript and a translated one. What we don't have, because I agree with the Court, it's very important that we see the video because there we can see the expressions on the individual, the manner in which he was sitting or standing, his facial expressions. Those, I think, give us a much better understanding as to what happened. But if we consider the sworn statement of the Petitioner under the circumstances that the report was taken, I think we have an idea that, first of all, 20 hours had elapsed before he was taken into a room and put a camera on his face and said, you need to tell us the truth. Well, you're arguing this was coercive. I want to ask you the same question as I asked you last counsel. Suppose we agree with you and decide let's take out the coercive, remove the coercive statement, the coerced statement from the record. Doesn't the remaining evidence also lead to the same conclusion? No, Your Honor. Not in my opinion. I think that the evidence, if this is the way I look at it, if we remove the Petitioner from the scene. Not the Petitioner from the scene. We remove the coerced statement from the body of evidence in this case. With the same result? Well, I'm just saying, how would you argue that the government didn't have sufficient evidence to prove the charge of alien smuggling? By the simple fact that he did not have any actual involvement in the fact. The fact that he rode along with his wife is not sufficient. He's a rider in the vehicle. Of course, he's going to discuss it with his wife, their husband and wife, they're living under the same roof. But there's no evidence that he drove the vehicle, he even put gas in the vehicle, that he saw the picture. He didn't even know these individuals. He went along for the ride. And, of course, he went along because his three children were in the car. He wanted to make sure that his wife was okay in case she was thrown into jail. He was taking a step back. He was saying, it's up to you. If you want to do, I am with you. That's not encouragement, in my opinion. That's not abetting. That's not assisting. That is simply being a good husband, perhaps lack of a better term. But I don't think the evidence, as we see it, the evidence as a whole makes the government's argument strong that they, in fact, met its burden. And it's a high burden. But there's nothing to tie it on him. There's nothing. All right. Thank you, Counsel. Thank you. I believe my time is up. Seven minutes over your time. Thank you for this opportunity. All right. I'm going to ask you the questions. Was there an alternative holding by the BIA here, assuming the statement was coerced? Yes. Yes, the BIA discussed the alternative holding, which was that even absent any of these allegations of coercion with regard to the petitioner's statements, the petitioner's wife clearly provided a statement that her husband helped her and that they both agreed to the smuggling scheme and that they both were aware of the consequences of their actions. And so on that basis alone, even if the court were to disregard all of the statements and just find that those statements could not be used, were not admissible, just the statement of his wife still stands independently to establish the charges against the petitioner. Will you also agree to provide the DVD to us of the interview in this case, too? Sure. Thank you. Thank you. Ma'am, as it relates to the coerced statements, did the BIA ever talk about the coercion as it relates to coercive tactics? As I read the record, I couldn't find anything in there that the BIA had ever talked about that. The BIA talked about, and I'll refer you to the page, it's page 3 of the transcript, and it's the bottom paragraph. They talk about the noting that the respondent failed to establish, acted egregiously during the course, but then they go, for example, while the respondent contends he was detained without rest, food, and all of that, and they go all the way through about rest, food, water, visits, all of that, and they make a pretty good determination about that. But where do they make any determination about coercion? It seemed to me that that was raised to them, and they didn't make any determination. So wouldn't I need, if I were not going to adopt the alternative finding for the wife, wouldn't I need to send this back for them to then give some thought about the coercive interrogation? Well, on page 2, the board does say that the immigration... Where? On page 2, in the middle of the third paragraph. In this case, the immigration judge's admission of the government-prepared forms did not deny the respondent due process because it did not provide probative evidence casting doubt on their reliability. And really, this is a discussion referring, I believe, to the immigration judge's specific findings. But just a minute. It seems to me that the admission of the forms, we could talk about the admission of the forms, but I don't think anything in the particular regulations or in the code would suggest they shouldn't be admitted. In fact, we admit lots of stuff in the BIA procedures and immigration procedures. It's just how much weight we give them because of the coercion. So I think they did talk about the admission, and I agree that that's what that paragraph's about. But my worry is trying to find out whether they said anything about coercive tactics and whether they really were coercive. I mean, they talk about them coercive as to taking them without rest, food, water, and visits, but they don't talk about the interrogation tactics themselves. It's not specifically. I don't see that it's specifically discussed here. But, again, I think that this question of whether or not these documents, whether or not there was ever probative evidence casting doubt on the documents really goes to the issue of whether or not there was any allegations of coercion or forced statements. And that is actually in Ninth Circuit case law where they discuss the fact that in immigration circumstances that that is one reason the court would find that evidence might actually be excluded, even in an immigration proceeding, because it was fundamentally unfair and not probative. But you didn't even cite in your briefs, at least I couldn't find them, the Gonzaga-Ortega case that talks about this coercion and talks about it in the sense of treated fine, statements were voluntary, no physical abuse, brief period being held. Well, it's the government's position, Your Honor, that that's what's being discussed there, essentially that the Petitioner did not raise evidence that then shifted the burden to the government to, you know, basically shore up the evidence that they, the evidence on the government forms that they submitted. Well, I hate to throw you a lifeline, but maybe you'll like it. As to Judge Smith's question as to whether there was any finding regarding force or threatening. Yeah. At the bottom of page 2, the Respondent went on to state that he was treated fine since being with immigration officers and that he was not forced or threatened in any way. Does that help you? It does stay there. Sorry, I didn't catch that right there. Did you prepare for this oral argument? Yes, I did, Your Honor, but there are a lot of different issues that I was prepared to discuss today, and I didn't happen to have that one particular line. Well, being prepared means knowing what the BIA and the IJ wrote and held and said and where it is. All right. So based on the evidence that has been before the Court, clearly the Petitioner, there's substantial evidence that the Petitioner's actions constituted alien smuggling. And even if the Court were to find that the Petitioner's statements were coerced in any way, there's independent evidence, as the Board found in the Petitioner's wife's statement, that the Petitioner did both agree to plan with her to use their daughter's birth certificate and that they were both aware of the consequences of her actions. Again, because the Petitioner failed to present credible evidence challenging the reliability of the agency's documents, the Court should find that the agency properly denied the motion to suppress and should deny the Petitioner's review. Thank you, Your Honor. Thank you, counsel. Did you have any rebuttal? No, Your Honor.  Thank you very much. Nina's tenant will be submitted.
judges: Wardlaw, Bea, Smith